## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
BIRTER F. BLACKMON,            )
                               )
          Plaintiff,           )
                               )
     v.                        )   Civil Action No. 08-1415 (EGS)
                               )
TIMOTHY COX,                   )
CHIEF OPERATING OFFICER,       )
ARMED FORCES RETIREMENT HOME,  )
                               )
          Defendant.¹          )
                               )
_____)
```

### MEMORANDUM OPINION

Plaintiff Birter Blackmon, proceeding pro se, is an African-American female, and a licensed practical nurse and wound care specialist.  Plaintiff was terminated by her former employer, Armed Forces Retirement Home ("AFRH"), after a resident in her care developed maggots in a wound on his lower left leg. Plaintiff brings this action against defendant alleging race discrimination and retaliation in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  Pending before the Court

---

[1]     In her complaint, plaintiff named Donald C. Winter, Secretary of the Navy, as defendant in this action.  Defendant states in its motion and reply brief that the Final Agency Decision that informed plaintiff of her right to sue had "mistakenly indicated that the proper defendant was the Secretary of the Navy." Def.'s Mot. at 1 n.1; Def.'s Reply Br. at 1 n.1. Defendant asserts that "[t]he proper defendant is Timothy Cox, Chief Operating Officer, Armed Forces Retirement Home." *Id.* Accordingly, based on these representations, the Court has substituted Timothy Cox, Chief Operating Officer, Armed Forces Retirement Home for Donald C. Winter, Secretary of the Navy as defendant in this action.

is Defendant's Motion to Dismiss or, In the Alternative, Motion
for Summary Judgment.  Upon consideration of the motion, the
response and reply thereto, the applicable law, the entire
record, and for the reasons stated below, the Court **GRANTS**
defendant's motion to dismiss as to plaintiff's retaliation claim
and **GRANTS** defendant's motion for summary judgment as to
plaintiff's discrimination claim.

## I. BACKGROUND [2]

On January 23, 2006, plaintiff received a career-
conditional appointment as a nurse with the AFRH in Washington,
D.C.  The AFRH provides residences and related services to
retired former members of the Armed Services.  Plaintiff's
career-conditional appointment was subject to completion of a
one-year probationary period.  As a nurse at the AFRH,

---

[2]    As a preliminary matter, plaintiff's opposition brief failed
to comply with Local Civil Rule 7(h), as it did not include a
separate concise statement of genuine issues setting forth all
material facts as to which she contends there is a genuine issue
necessary to be litigated.  While plaintiff was not notified of
this specific requirement, she was informed that "any factual
assertions contained in the affidavits and other attachments in
support of Defendant's motion will be accepted by the Court as
true unless Plaintiff submits her own affidavits of other
documentary evidence contradicting the assertions in Defendant's
attachments." Def.'s Mot. at 2; *see generally* Def.'s Mot. at 1-2
(advising the pro se litigant of her responsibilities in
responding to the motion and discussing *Fox v. Strickland*, 837
F.2d 507 (D.C. Cir. 1988) and *Neal v. Kelly*, 963 F.2d 453 (D.C.
Cir. 1992)).  Because plaintiff failed to submit any contrary
evidence, the Court accepts as true the factual assertions
contained in defendant's affidavits and documentary evidence.

plaintiff's major duties included "performing nursing assignments
of a highly specialized nature to include medication
administration and hands on nursing care; identifying patient
problems and providing input into the plan of care; recognizing
changes in patient's condition; and communicating responses
and/or changes to others to include all personnel, physicians and
members of multidisciplinary teams."  Def.'s Statement of Mat.
Facts ("Def.'s Facts") ¶ 5 (quoting from Ex. E, Blackmon's
Position Description).

     In addition to her general patient care duties, the AFRH
assigned plaintiff to serve as the "primary care nurse" for
approximately five residents at any given time.  As a resident's
primary care nurse, plaintiff's responsibilities included
ensuring that the paperwork for her assigned residents was
complete and accurate, preparing and updating patient care plans,
reviewing medication activity records, and preparing a monthly
summary based in part on her review of records in residents'
charts that indicated what had transpired that month.  Def.'s Ex.
M, Dep. of Birter Blackmon ("Blackmon Dep.") at 42, 49-51, 221,
351.

     In July 2006, plaintiff was assigned as the primary care
nurse for an 80-year-old resident at the AFRH who had a
documented history of chronic ulcers (wounds) on his lower legs.
Def.'s Facts ¶¶ 6-7.  The resident had a longstanding order that

3

the wounds on his lower extremities were to be cleaned with a wound cleanser and that hydrogel and dry sterile dressings were to be placed on his wounds "daily."  *See* Def.'s Ex. G, Aff. of Elizabeth Weathington ("Weathington Aff.") at 2.  Despite these specific instructions, the resident's wounds were not cleaned most days that plaintiff was assigned as his primary care nurse. *See* Def.'s Ex. R, Concurrent Review Sheets (documenting that the resident's wounds were cleaned infrequently in July 2006, and were not cleaned at any point between August 1, 2006 and August 13, 2006).  On August 13, 2006, approximately fifty maggots were found inside the resident's wounds and the resident was transported to the emergency room where his leg was markedly swollen.  Def.'s Facts ¶¶ 8-9.

After an investigation into the incident, the AFRH terminated plaintiff and seven other nurses who were involved in the care of the resident.  Def.'s Facts ¶ 10.  The AFRH disciplined eleven employees in total due to the incident.  The terminated and/or disciplined employees were of various races and backgrounds.  Def.'s Facts ¶ 11; *see infra* n.8.  Plaintiff, however, was the only probationary employee involved in the care of the resident.  Def.'s Facts ¶ 12; Blackmon Dep. at 127. Robert Palmer, Human Resource Specialist, recommended to the Agency that plaintiff be removed during her probationary period

in accordance with 5 C.F.R. § 315.804,[3] and drafted a Notice of Termination During Probationary Period for the Agency's consideration.  *See* Def.'s Ex. J, Aff. of Robert Palmer ("Palmer Aff.") at 2-4.  On August 22, 2006, before the completion of plaintiff's probationary period, the AFRH issued a Notice of Termination to plaintiff, which became effective on August 28, 2006.  Def.'s Facts ¶ 13.

On August 28, 2006, plaintiff made her initial contact with an Equal Employment Opportunity ("EEO") Counselor.  Def.'s Facts ¶ 14.  The EEO Counselor conducted an initial investigation and, on November 21, 2006, plaintiff was sent a Notice of Right to File Action.  *See* Def.'s Ex. Y.  On December 4, 2006, plaintiff filed a Formal Complaint of Discrimination ("Formal Complaint") with the Agency's EEO Counselor alleging that the AFRH discriminated against her based on her race.  *See* Def.'s Ex. V.  On December 20, 2006, plaintiff was informed that her complaint was accepted for investigation.  *See* Def.'s Ex. X.  After the

---

[3]     5 C.F.R. § 315.804, which governs termination of probationers for unsatisfactory performance or conduct, states, in relevant part: "[W]hen an agency decides to terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment, it shall terminate his services by notifying him in writing as to why he is being separated and the effective date of the action. The information in the notice as to why the employee is being terminated shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct."

investigation was complete, plaintiff was provided with a copy of her investigative file and given the opportunity to request a Final Agency Decision or a hearing and decision by the Equal Employment Opportunity Commission ("EEOC").  *See* Def.'s Ex. A. Plaintiff requested a hearing before the EEOC, and on August 24, 2007, her case was assigned to an EEOC administrative judge.  *See* Def.'s Ex. Z.  Plaintiff's complaint was subsequently dismissed from the hearing process, however, due to plaintiff's failure to comply with the administrative judge's orders.  *See* Def.'s Ex. BB.  Her complaint was remanded for a Final Agency Decision. On April 18, 2009, plaintiff received a Final Agency Decision from the Naval Office of EEO Complaints Management and Adjudication, concluding that plaintiff had not been discriminated against as alleged.  *See* Def.'s Ex. A.  The Final Agency Decision informed plaintiff of her right to file a lawsuit in the appropriate United States District Court.

On July 15, 2008, plaintiff, pro se, filed her complaint in the Superior Court of the District of Columbia ("D.C. Superior Court").  On August 8, 2008, the United States Attorney's Office ("USAO") received notice of the complaint, and on August 20, 2008, the USAO removed the matter to this Court.  Defendant filed its Motion to Dismiss, or in the Alternative, for Summary Judgment on October 24, 2008.  That motion is now ripe for determination.

## II.  STANDARD OF REVIEW

The Court should grant a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) if plaintiff, in his or her pleading, fails to present "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (clarifying the standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957)); *Kowal v. MCI Communc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that a court must construe the complaint "liberally in the plaintiff's favor" and "grant plaintiffs the benefit of all inferences that can be derived from the facts alleged").  On such a motion, a court construes a *pro se* complaint liberally.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A court need not, however, "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must [a] court accept legal conclusions cast in the form of factual allegations."  *Kowal*, 16 F.3d at 1276.  To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 545.  In deciding a motion to dismiss under Rule 12(b)(6), a court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take

7

judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court should grant summary judgment only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. Of Columbia*, 298 F. 3d 989, 991 (D.C. Cir. 2002). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex*, 477 U.S. at 323. In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party's opposition must consist of more than mere unsupported allegations of denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. To survive a motion for summary judgment, plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the non-moving party fails to

make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to a judgment as a matter of law.  *See Celotex*, 477 U.S. at 322.

## III.    DISCUSSION

### A.    Plaintiff's Filing in D.C. Superior Court

Defendant first argues that plaintiff's complaint should be dismissed because "by bringing her claim in the [D.C.] Superior Court, Plaintiff has brought her claim in the wrong court."  *See* Def.'s Br. at 16-19.  Defendant argues, among other things, that by bringing her lawsuit in the "wrong" court, plaintiff's action was not timely filed because the action did not lie in a court with subject matter jurisdiction within Title VII's requisite ninety days.  *See* Def.'s Br. at 19-20 ("Here, plaintiff's failure to file the instant action in this Court within the applicable statue of limitations renders her Complaint flawed, warranting its dismissal.").  The Court finds defendant's argument unpersuasive.

In *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820 (1990), the Supreme Court held that state and federal courts have concurrent jurisdiction over Title VII cases.  *See id.* at 821 (examining "whether federal courts have exclusive jurisdiction over civil actions brought under Title VII of the Civil Rights Act of 1964" and "conclud[ing] that Congress did not divest the

9

state courts of their concurrent authority to adjudicate federal
claims"). The D.C. Superior Court therefore has concurrent
jurisdiction over Title VII civil actions such as the one filed
by plaintiff. *See, e.g.*, *Carter-Obayuwana v. Howard Univ.*, 764
A.2d 779, 786 n.16 (D.C. 2001) (reviewing a Title VII case and
noting at the outset that "[s]tate courts have concurrent
jurisdiction with federal courts over civil actions brought
pursuant to Title VII").

Accordingly, the Court rejects defendant's argument that
plaintiff filed her lawsuit in the "wrong" court. Because
plaintiff filed her lawsuit in D.C. Superior Court within the
requisite ninety days, the Court concludes that plaintiff's suit
was timely filed. *See Ikossi v. Dep't of Navy*, 516 F.3d 1037,
1044 (D.C. Cir. 2008) ("To be timely, she was required within
ninety days of the EEO dismissal of her complaint either to
appeal to the EEOC or to file a civil suit." (citing 42 U.S.C. §
2000e-16(c)).

## B.   Failure to Cooperate in the Administrative Process

Defendant also asserts that plaintiff's lawsuit should be
dismissed because plaintiff failed to cooperate in the
administrative process.[4]  In support of this argument, defendant

---

[4]   While motions to dismiss for failure to exhaust Title VII
administrative remedies are normally resolved as motions to
dismiss for failure to state a claim under Rule 12(b)(6), *see
Marcelus v. Corr. Corp. of America*, 540 F. Supp. 2d 231, 234
(D.D.C. 2008), in this case, plaintiff's complaint did not attach

points to plaintiff's failure to prosecute her case before an

EEOC administrative judge.  The undisputed facts are as follows.

On December 4, 2006, plaintiff filed a Formal Complaint of

Discrimination alleging that defendant discriminated against her

based on race with the Agency's EEO Counselor.  *See* Def.'s Ex. V.

On December 20, 2006, plaintiff was informed that her complaint

was accepted for investigation by the Department of Defense,

Investigations and Resolutions Division.  *See* Def.'s Ex. X.  Upon

conclusion of the investigation, plaintiff was provided with a

copy of her investigative file and advised of her right to

request a Final Agency Decision or a hearing and decision by the

EEOC.  *See* Def.'s Ex. A ("You were provided a copy of the

Investigative File and advised of your right to request a Final

Agency Decision (FAD) by the Secretary of the Navy, or a hearing

and decision by the Equal Employment Opportunity Commission.").

On July 31, 2007, plaintiff requested a hearing before an

EEOC administrative judge.  *See* Def.'s Ex. Z (Acknowledgment and

Order regarding plaintiff's request for a hearing).  Due to

plaintiff's repeated failures to participate in the discovery

process and to respond to the Administrative Court's orders, the

---

or reference the relevant Agency documents*.  Cf. id.* at 235 n.5
(treating an EEOC charge as incorporated in the complaint because
it was referenced therein).  Because the Court must look outside
the pleadings to resolve the exhaustion issues presented in this
case, the Court will consider plaintiff's failure to exhaust her
Title VII administrative remedies under the summary judgment
standard.

administrative judge dismissed plaintiff's complaint from the
hearing process and remanded the case to the Agency for a Final
Agency Decision.  *See* Def.'s Ex. BB ("I DISMISS this Complaint
from the hearings process pursuant to 29 C.F.R. §§ 1614.109(b)
and 1614.109(f)(3)(v), and REMAND the case to the Agency so that
the Agency may issue a Final Agency Decision pursuant to 29
C.F.R. § 1614.110."); Def.'s Ex. A ("On February 19, 2008, EEOC
dismissed your request [for a hearing], based on your failure to
comply with the Administrative Judge's orders, and remanded your
complaint to this Office for a FAD.").

        Defendant argues that because Plaintiff failed to fully
cooperate in the administrative hearing process, her subsequent
civil action was improper as she failed to exhaust her
administrative remedies prior to filing suit.  *See Smith v.
Koplan*, 362 F. Supp. 2d 266, 268 (D.D.C. 2005) ("Courts equate
cases of failing to cooperate with the agency as cases where a
plaintiff has failed to exhaust her administrative remedies.").

        While it is undoubtedly true that claimants have an
"obligation of good faith participation in the administrative
process prior to bringing a civil action," Def.'s Br. at 24, "[a]
complainant may be barred from filing suit for failure to exhaust
only '[i]f a complainant forces an agency to dismiss or cancel
the complaint by failing to provide the agency sufficient
information to investigate the claim.'"  *Brown v. Tomlinson*, 462

F. Supp. 2d 16, 21 (D.D.C. 2006) (quoting *Wilson v. Pena*, 79 F.3d
154, 164 (D.C. Cir. 1996)).  In this case, although complainant's
request for a hearing was dismissed due to her failure to
prosecute and comply with the Administrative Court's orders, the
Agency was not forced to dismiss or cancel the complaint.  In
fact, after the hearing was dismissed and the case was remanded,
the Agency issued a lengthy Final Agency Decision - including a
seven-page "Analysis of the Case" - based on the record evidence.
*See* Def.'s Ex. A, Final Agency Decision ("The case record
concerning your complaint has been carefully reviewed.  It is the
decision of this Office that you were not discriminated against
as alleged.  The rationale for this decision is set forth in
enclosure (1), 'Analysis of the Case.'"); *see also* Def.'s Ex. B
(report detailing the Agency's investigation of plaintiff's
complaint, including sworn interviews with plaintiff and her
supervisors).  Because the Agency was able to take final action
on the merits, the Court declines to dismiss plaintiff's suit for
failure to cooperate with the administrative process.  *See, e.g.*,
*Wilson*, 79 F.3d at 165 ("Where the agency has taken final action
based on an evaluation of the merits, it cannot later contend
that the complainant failed to exhaust [her] remedies.").

        C.    **Retaliation Claim**

        Next, defendant argues that plaintiff's retaliation claim
should be dismissed.  Assuming that the Agency had adequate

notice of plaintiff's retaliation claim,[5] plaintiff has failed to

state a claim for retaliation.   "To establish a prima facie case

of retaliation, a claimant must show that (1) she engaged in a

statutorily protected activity; (2) she suffered a materially

adverse action by her employer; and (3) a causal connection

existed between the two."   *Wiley v. Glassman*, 511 F.3d 151, 155

(D.C. Cir. 2007).   While Title VII plaintiffs need not plead each

element of a prima facie case to survive a motion to dismiss,

---

[5]      Defendant also argues that plaintiff's retaliation claim
should be dismissed for failure to exhaust her administrative
remedies, asserting that plaintiff failed to raise her
retaliation claim prior to filing suit in D.C. Superior Court.
While it is true that plaintiff failed to list retaliation in her
Formal Complaint, the evidence indicates that the Agency was
aware of plaintiff's "retaliation claim."   *See* Def.'s Ex. DD, EEO
Counselor's Report ("Ms. Blackmon believes she was targeted for
termination following a series of issues she brought to the
attention of management officials about discrepancies in medical
care, problems within the nursing staff, and improvements needed
in the physical working conditions of the health care
facility."); Def.'s Ex. B, Agency Report of Investigation at 4
("Complainant adds that she believes she was retaliated against
for reporting her co-workers for sleeping on the job and for
complaining too much about the conditions for the residents.");
Def.'s Ex. C, Aff. of Birter Blackmon at 4 ("Blackmon Aff.")
("There were a lot of things going on and I was being retaliated
against that I reported things that were wrong.   I reported one
person for sleeping and there was a big issue because of that.   I
also gave Ms. Terrell a warning for sleeping. . . . I also
believe that I was terminated for complaining too much about the
conditions for the residents and about the conduct of other
employees.").   Given the "significant leeway" afforded Title VII
plaintiffs, *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500
(7th Cir. 1994), the Court will assume without deciding that the
Agency was given sufficient notice of plaintiff's retaliation
claim through plaintiff's sworn statement to the Agency regarding
retaliation and the Agency's own investigation report.

they must allege facts that, if true, would establish the elements of the claim. *Robinson-Reeder v. Am. Council on Educ.*, 532 F. Supp. 2d 6, 14 (D.D.C. 2008). In particular, plaintiff must allege facts demonstrating her engagement in the opposition of a Title VII violation or her participation in an investigation of such a violation. *See* 42 U.S.C. § 2000e-3(a)("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."). In this case, plaintiff's complaint states only that she was discriminated against based on "reprisal." *See generally* Compl. ¶ 1. Plaintiff does not identify any statutorily protected activity that she participated in nor does she allege that her participation in such an activity led to her termination. Plaintiff's bare assertion of "reprisal" is insufficient to satisfy even the most liberal pleading standard. *See Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006) ("[I]n order to survive a motion to dismiss, 'all [the] complaint has to say,' is 'the Government retaliated against me because I engaged in protected activity.'" (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000)) (internal citations omitted)). Accordingly, the Court finds that

15

plaintiff failed to state a claim for retaliation and **GRANTS** defendant's motion to dismiss as to this claim.

### D.    DISCRIMINATION CLAIM

Plaintiff also alleges that she was "discriminated against, based on [her] race (African American)."  Compl. at ¶ 1.  Title VII makes it unlawful for a federal government employer to discriminate based on race.  42 U.S.C. § 2000e-16(a). In cases such as this one, where "a plaintiff produces no direct evidence of discrimination, [the Court] analyze[s] a Title VII claim under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), initially placing the burden on the plaintiff to establish a prima facie case of discrimination; [6] shifting it to the defendant employer to articulate some legitimate, non-discriminatory reason for the employment action; and shifting it back to the plaintiff to prove by a preponderance of the evidence that the proffered reasons are a pretext for discrimination."  *Mastro v. Potomac Elec. Power Co.,* 447 F.3d 843, 850 (D.C. Cir. 2006) (internal quotations and citations omitted).  "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the

---

[6]    The elements of a *prima facie* case of discrimination are as follows: (1) plaintiff is a member of a protected class; (2) plaintiff has suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *See Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007); *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002).

plaintiff remains at all times with the plaintiff.'"  *Thompson v. Dist. of Columbia*, 573 F. Supp. 2d 64, 68 (D.D.C. 2008) (quoting *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003))).

Defendant argues that summary judgment is appropriate because it produced a legitimate non-discriminatory reason for its actions, which plaintiff has failed to rebut.  Specifically, defendant argues that plaintiff – a probationary employee - was terminated after an investigation by defendant revealed that a resident in plaintiff's care developed maggots in a wound due to negligent medical care.  *See* Def.'s Ex. I, Aff. of Linda Rader ("Rader Aff."), AFRH Administrator ("I made the decision to terminate [plaintiff's] employment with the AFRH. . . . She was terminated because, when you find a resident in a controlled environment with maggots, it tells me no one looked at him or assessed him and he was ignored.  It was so egregious that it cannot be tolerated."); Def.'s Ex. G, Weathington Aff., AFRH Director of Nursing (discussing the "incident of a resident who had maggots in his wound," and then stating that "[plaintiff] was terminated because she was negligent in the care of this resident"); *see also* Def.'s Ex. K, Letter of Termination ("This memorandum constitutes a notice of termination during your probationary period.  Your termination is based upon your negligence in performing the duties of your position.  As you

17

know, recently a resident in the [AFRH], under your primary care, developed maggots in his wounds as a direct result of your negligence to perform the duties of your position. . . . Your poor performance in this instance is completely unacceptable.").

Because defendant put forth a legitimate, non-discriminatory reason for plaintiff's termination, this Court need not determine whether plaintiff established a prima facie case. *See Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) ("In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not - *and should not* - decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*."). Accordingly, the only remaining issue before the Court is whether "[plaintiff] produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.* When determining whether summary judgment is warranted for the employer, the Court considers all relevant evidence presented by the plaintiff and the defendant. *Id.*

Plaintiff argues that defendant's stated reason for her termination was pretextual because (I) she was "terminated for

18

alleged untrue reasons" and (ii) she was "treated less favorably than similarly situated, non-African American nurses involved in [the] patient negligence case." *See* Compl. at ¶ 1.  The Court will address both of these arguments in turn.

Plaintiff's first argument – that she was terminated for "untrue reasons" – is based on plaintiff's assertion that she did not engage in "any direct negligent behavior."  Aff. of Birter Blackmon at 3.  While an employee may demonstrate pretext by "demonstrat[ing] that the employer is making up or lying about the underlying facts that formed the predicate for the employment decision," "[i]f the employer's stated belief about the underlying facts is reasonable in light of the evidence . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *See, e.g.*, *Brady*, 520 F.3d at 495.  In this case, defendant conducted a thorough investigation of the incident, which led to the termination of seven employees, including plaintiff, and the discipline of four others.  *See infra* n.8 (discussing the other personnel who were terminated as a result of the incident).  Defendant put forth sworn declarations and other documentary evidence regarding plaintiff's role in the care of the resident who developed maggots in his wounds, including that: plaintiff was a certified wound care specialist with nineteen years of nursing experience, Pl.'s Dep. at 272; plaintiff was the

resident's primary care nurse, charged with reviewing the
resident's medical records each night, Pl.'s Dep. at 41-42, 86-
87; plaintiff made nightly rounds to the resident's room to see
if he was getting the care provided, Pl.'s Dep. at 282; plaintiff
knew that the resident's orders required daily wound care, Pl.'s
Dep. at 76, 340-41; plaintiff never examined the resident's
wounds or dressing during the time she was the resident's primary
care nurse, Pl.'s Dep. at 105, 273; plaintiff knew or could have
determined from a review of the resident's records that he was
not getting the baths and "skin audits" that he was supposed to
be getting, Pl.'s Dep. at 86-87; and plaintiff was aware that
serious problems could develop if wounds were not properly
treated, Pl.'s Dep. at 273-74.  Accordingly, in light of the
undisputed factual record in this case, plaintiff's vague,
unsubstantiated allegation that she was terminated for "untrue
reasons" does not create a genuine issue of material fact
sufficient to withstand summary judgment.  *See Ginger v. District
of Columbia*, 527 F.3d 1340, 1347 (D.C. Cir. 2008) ("'[A] mere
unsubstantiated allegation . . . creates no genuine issue of fact
and will not withstand summary judgment.'" (quoting *Harding v.
Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993))).

Plaintiff's next argument is that she was treated "less
favorable than similarly situated, non-African American nurses."
Compl. at ¶ 1.  Specifically, plaintiff argues that "other staff

20

of different nationality but with the same status as [herself]"
were allowed to participate in the investigation of the incident
and/or were given the option to resign or retire, while she was
not.  Pl.'s Opp'n Br. ¶ 14.[7]  The Court finds this argument
misplaced, however, because none of the employees to whom
plaintiff seeks to compare herself were similarly-situated.
Specifically, plaintiff was the only probationary employee
involved in the care of the resident.  Def.'s Facts ¶ 12;
Blackmon Dep. at 127.  As a matter of law, probationary and non-
probationary federal employees are not similarly situated because
they are subject to different rules with respect to discipline as
well as other aspects of employment.  *See*, e.g., *McMillan v.
Bair*, 304 Fed. Appx. 876, 877 (D.C. Cir. 2008) ("[Plaintiff]'s
only asserted evidence of pretext fails because probationary
trainees are not similarly situated to permanent employees for
purposes of Title VII when an employer decides to retain or
dismiss the probationary employee."); *Holbrook v. Reno*, 196 F.3d
255, 262 (D.C. Cir. 1999) (explaining that in *McKenna v.
Weinberger*, 729 F.2d 783 (D.C. Cir. 1984), the Circuit "expressly

---

[7]     The other nurses and aides who were terminated for the
incident were: F.T.(Black/Carribean), resigned before proposed
termination; H.S.(White), resigned after proposed termination;
H.O.(African-American), retired before proposed termination;
I.V.(Hispanic/White), retired after proposed termination; P.A.
(African-American), retired before proposed termination; T.A.
(Black/Unknown National Origin), resigned before proposed
termination.  *See* Ex. I, Rader Aff. at 3-4.

held that a probationary employee was not similarly situated to a permanent employee"). Plaintiff, therefore, has failed to demonstrate that the reason she was treated differently than other nurses involved in the investigation was based on race discrimination. *See Montgomery v. Chao*, 546 F.3d 703, 707 (D.C. Cir. 2008) ("In the absence of evidence that the comparators were actually similarly situated to him, an inference of falsity or discrimination is not reasonable." (internal quotation marks omitted)).

Plaintiff has adduced no additional evidence to support her claim of race discrimination. Accordingly, the Court concludes that plaintiff has failed to present evidence from which a reasonable factfinder could conclude that defendant's non-discriminatory reason for plaintiff's termination was pretext for discrimination, and therefore **GRANTS** defendant's motion for summary judgment as to plaintiff's discrimination claim.

IV.  **CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss as to plaintiff's retaliation claim and motion for summary judgment as to plaintiff's discrimination claim are **GRANTED**. An appropriate Order accompanies this Memorandum Opinion.

Signed:    **EMMET G. SULLIVAN**
           **UNITES STATES DISTRICT JUDGE**
           **September 25, 2009**